UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-CV-60089-DIMITROULEAS/SNOW

GULBIN DEGIRMENCI,

     Plaintiff,

vs.

SAPPHIRE—FORT LAUDERDALE, LLLP, a
Florida limited liability limited partnership;
ALTMAN SAPPHIRE GP, LLC, and REGIONS
FINANCIAL CORPORATION, a Delaware
corporation,

     Defendants.

_____/

### DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), Defendants, SAPPHIRE—

FORT LAUDERDALE, LLLP ("Sapphire"), ALTMAN SAPPHIRE GP, LLC ("GP"), and

REGIONS FINANCIAL CORPORATION ("Regions") hereby move to dismiss the Third

Amended Complaint [D.E. 158] filed by Plaintiff, GULBIN DEGIRMENCI ("Ms.

Degirmenci"), and in support thereof respectfully submit the following:

#### Introduction

Ms. Degirmenci's Third Amended Complaint seeks the return of a condominium deposit

she made pursuant to an agreement (the "Contract") for the proposed purchase of a condominium

unit from Sapphire as well as other purported legal and equitable relief. *See, generally*, Third

Amended Complaint. Ms. Degirmenci failed to close on her purchase as she agreed to do and

now seeks to avoid losing her deposit. Third Amended Complaint at ¶117. As set forth below,

the Court should dismiss the Third Amended Complaint because all of its Counts either fail to state a claim upon which relief may be granted, lack sufficient allegations of standing, or otherwise fail to trigger this Court's subject matter jurisdiction.   Moreover, the Court should strike the all-encompassing "Prayer for Relief" following Count IX as both procedurally improper and impermissibly vague.

**Memorandum of Law**

## I.  Standard for Dismissal.

The Court is no doubt familiar with the legal standard applicable to ruling upon a motion to dismiss for failure to state a claim upon which relief may be granted. *See, e.g., Berg v. Merchants Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1339 (S.D. Fla. 2008)(Dimitrouleas, J.).

## II.  Ms. Degirmenci lacks standing to assert Counts I through IV because she has not alleged any injury as a result of the Defendants' purported violations of 15 U.S.C. § 1703(a)(1)(A)-(D).

In Counts I through IV of the Third Amended Complaint, Ms. Degirmenci purports to assert four allegedly distinct claims under Section 1703(a)(1)(A)-(D) of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.* ("ILSFDA"), against all of the Defendants.  At the core of each of Ms. Degirmenci's ILSFDA claims are her overarching allegations that the property's statement of record (Counts I and III), property report (Counts II and III), and advertising materials (Count IV) either contain untrue statements of material fact or omit to state alleged facts "required" to be stated therein or which are otherwise necessary to make other "required" statements not misleading.  *See* Third Amended Complaint at ¶¶145, 158, 169, and 177.  Whatever the merits of Ms. Degirmenci's purported ILSFDA claims in Counts I through IV, it is clearly evident from the face of the Third Amended Complaint that she lacks standing to

-2-

bring *any* ILSFDA claims as a result of the Defendants' purported misrepresentations or omissions because, by her own admission and failure to plead, those purported violations of Section 1703(a)(1)(A)-(D) caused her no injury in fact. The Court must therefore dismiss Counts I through IV.

As the Eleventh Circuit Court of Appeals recently explained in *Dermer v. Miami-Dade County*, ---F. 3d ----, 2010 WL 890137 at *2 (11th Cir. 2010), prior to determining whether a plaintiff has stated a claim upon which relief may be granted, a court must first address "the threshold question whether [the plaintiff has] alleged a case or controversy within the meaning of [Article] III of the Constitution or only abstract questions not currently justiciable by a federal court." *Id.*(quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297 (1979); citing *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339-40 (11th Cir. 2000)). "To allege a justiciable cause of action, a plaintiff must plead facts that are sufficient to confer standing and demonstrate that the claim is ripe for determination." *Id.*(citing *Ass'n for Children for Enforcement of Support, Inc. v. Conger*, 899 F.2d 1164, 1165 (11th Cir.1990)). Most critically, "*Standing* for Article III purposes *requires* a plaintiff to provide evidence of an *injury in fact*, causation and redressibility." *Id.* (emphasis added; citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In other words, a statutory violation alone is not enough; there must be some form of damages or other injury. *Id.*; *Lujan*, 504 U.S. at 560-561.

Ms. Degirmenci's purported claims under Sections 1703(a)(1)(A)-(D) fail as a matter of law because she has not alleged—and could not truthfully allege—that she has suffered any "injury in fact" as a direct consequence of the alleged misrepresentations and omissions about which she now complains. *Id.*; *Lujan*, 504 U.S. at 560-561. In light of the fact that the Third Amended Complaint never once alleges that Ms. Degirmenci suffered any form of injury as a

Egozi & Bennett, P.A. · 2999 NE 191st Street, Suite 407 · Aventura, Florida 33180 · Tel 305.931.3000 · Fax 305.931.9343

result of the Defendants' purported violations of Sections 1703(a)(1)(A)-(D), Counts I through IV must be dismissed because Ms. Degirmenci cannot claim any injury in fact for the Court to redress, such that she plainly lacks standing to bring a claim under Section 1703(a)(1) *regardless* of whether the Defendants violated any of its provisions. *Id.*; *Lujan*, 504 U.S. at 560-561; *see also* Order Denying Renewed Motion for Reconsideration; Denying Leave to Amend [D.E. 175] (the "Reconsideration Order") at 12 n. 4("[I]f Plaintiff concedes that she has suffered no injury or damages as a result of Defendants' [alleged misrepresentations or omissions] it is questionable whether Plaintiff would even have standing to assert such a claim as there is no purported injury for the Court to redress.")

Simply put, the Defendants' purported ILSFDA violations are not alleged to have had any effect on Ms. Degirmenci whatsoever. As such, they cannot form the basis for a lawsuit. Therefore, Ms. Degirmenci lacks standing to bring a claim under Sections 1703(a)(1)(A)-(D), and the Court should dismiss Counts I through IV accordingly.

### III. Ms. Degirmenci is not entitled to seek specific performance in Counts I through IV.

In Counts I through IV, as well the all-encompassing "Prayer for Relief" following Count IX (discussed below), Ms. Degirmenci seeks, *inter alia*, specific performance as a remedy. Ms. Degirmenci is not entitled to any such remedy. To begin with, she fails to assert what, specifically, she is demanding that the Court order the Defendants to do. This clear violation of Rule 8 of the Federal Rules of Civil Procedure necessitates dismissal. Ms. Degirmenci has also failed to allege that she lacks an adequate remedy at law, yet another basis for dismissal. *See* Order Granting Motion to Dismiss [D.E. 125] (the "Order of Dismissal") at 27-28(specific performance is only available where there is no adequate remedy at law; citing *Hembree v. Bradley*, 528 So. 2d 116, 117-18 (Fla. 1st DCA 1988); *Shirley v. Lake Butler Corporation*, 123

Egozi & Bennett, P.A. · 2999 NE 191st Street, Suite 407 · Aventura, Florida 33180 · Tel 305.931.3000 · Fax 305.931.9343

So. 2d 267, 270 (Fla. 2d DCA 1960)).

Even more fundamentally, Ms. Degirmenci's demands for specific performance fail because the Contract explicitly prohibits Ms. Degirmenci from obtaining it; in keeping with this, the Court has thus far dismissed all of her demands for specific performance *with prejudice*. Contract at §13; Order of Dismissal at 27-28. To be precise, Section 13 of the Contract provides that "Buyer may *not* seek specific performance of Seller's obligations." [emphasis added]. As has been noted repeatedly throughout this case, exhibits (such as the Contract) which expressly contradict a complaint nullify conflicting allegations and claims for relief and should be considered in ruling on a motion to dismiss. Order of Dismissal at 17-18(citing *International Star Registry of Illinois v. Omnipoint Marketing, LLC*, 510 F. Supp. 2d 1015, 1022 (S.D. Fla. 2007)).

Because Section 13 of the Contract expressly precludes Ms. Degirmenci from seeking specific performance and Ms. Degirmenci never specifies what she is demanding the Defendants do or that she lacks an adequate remedy at law, the Court must dismiss Counts I through IV to the extent that they seek specific performance.

## IV. Counts I and II fail to state claims upon which relief may be granted pursuant to Sections 1703(a)(1)(A) and (B).

As noted above, Counts I through IV of the Third Amended Complaint each purport to assert causes of action pursuant to various provisions of Section 1703(a)(1) of ILSFDA against all of the Defendants. The plain language of Section 1703(a)(1) reveals that Ms. Degirmenci's ILSFDA claims in Counts I and II (which purport to state claims pursuant to Section 1703(a)(1)(A) and (B), respectively) must be dismissed for failure to state a claim upon which relief may be granted because they are based upon Ms. Degirmenci's misinterpretation of the

Egozi & Bennett, P.A. · 2999 NE 191st Street, Suite 407 · Aventura, Florida 33180 · Tel 305.931.3000 · Fax 305.931.9343

plain language of Section 1703(a)(1).

In essence, Counts I and II allege that the Defendants violated Sections 1703(a)(1)(A) and (B) because the statement of record and property report purportedly contain untrue statements of material fact and omit to state facts necessary to make other statements therein not misleading. Third Amended Complaint at ¶¶145, 158. The problem with Ms. Degirmenci's interpretation of Sections 1703(a)(1)(A) and (B), however, is that those provisions of ILSFDA *have nothing to do with the <u>veracity</u> of the <u>contents</u> of the statement of record and property report*; to the contrary, subsections (A) and (B) exclusively concern the *<u>existence and furnishing</u>* of those documents to the Division and buyer, respectively.

Section 1703(a)(1) reads *in its entirety*:

(a) Prohibited activities

It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails--

(1) with respect to the sale or lease of any lot not exempt under section 1702 of this title--

(A) to sell or lease any lot *unless a statement of record* with respect to such lot *is in effect in accordance with section 1706* of this title;

(B) to sell or lease any lot *unless a printed property report, meeting the requirements of section 1707 of this title, has been furnished to the purchaser* or lessee in advance of the signing of any contract or agreement by such purchaser or lessee;

(C) to sell or lease any lot where any part of the statement of record or the property report contained an *untrue statement of a material fact or omitted to state a material fact required to be stated therein pursuant to sections 1704 through 1707* of this title or any regulations thereunder; or

Egozi & Bennett, P.A. · 2999 NE 191st Street, Suite 407 · Aventura, Florida 33180 · Tel 305.931.3000 · Fax 305.931.9343

(D) to display or deliver to prospective purchasers or lessees *advertising and promotional material which is inconsistent with information required to be disclosed in the property report;*

[Emphasis added]. Even a cursory review of Section 1703(a)(1) reveals that each subsection lays out a distinct prohibited activity: (A) failure to have a statement of record *in effect* in accordance with 15 U.S.C. § 1706; (B) failure to *furnish* the buyer with a property report meeting the requirements of 15 U.S.C. § 1707; (C) including an *untrue statement or omission* of material fact in either the property report or the statement of record; and, (D) *advertising* in a manner *inconsistent* with the information disclosed in the property report.  In this way, and contrary to Ms. Degirmenci's completely unsubstantiated gloss of the statute's plain language, Sections 1703(a)(1)(A) and (B) only prohibit a developer from selling a condominium unit when no statement of record is "in effect" pursuant to Section 1706 or when no property report has been "furnished" to the buyer pursuant to Section 1707.  *Id*.  Subsection (C), in contrast, only concern itself with the accuracy of the contents of those documents.  *Id*.

Nevertheless, Ms. Degirmenci suggests that a statement of record is not in effect pursuant to Section 1706 and a property report is not furnished pursuant to Section 1707 if either contains a misrepresentation or omission of material fact.  *See, generally*, Third Amended Complaint at ¶¶148, 158.  But that interpretation would render Section 1703(a)(1)(C)—which prohibits the inclusion of untrue statements or omissions of material fact in either the property report or the statement of record—superfluous.  *U.S. v. Velez*, 586 F. 3d 875, 877 (11th Cir. 2009)(the courts must not read any provision of a statute so as to make it superfluous); *U.S. v. Aldrich*, 566 F. 3d 976, 978-979 (11th Cir. 2009)(same).  As noted above, Section 1703(a)(1)(C) expressly *and exclusively* prohibits the filing of a statement of record or property report containing misrepresentations or omissions of material fact.  Under Ms. Degirmenci's reading of the statute,

Egozi & Bennett, P.A. · 2999 NE 191st Street, Suite 407 · Aventura, Florida 33180 · Tel 305.931.3000 · Fax 305.931.9343

the filing of an allegedly fraudulent statement of record or property report would necessarily be a violation of *both* Sections 1703(a)(A) or (B) *and* (C) even though subsection (C) already prohibits such an act and *performs no other statutory function whatsoever*. In this way, if Ms. Degirmenci's interpretation of subsections (A) and (B) were correct, there would be no need for Section 1703(a)(1)(C) to exist at all. Not surprisingly, Ms. Degirmenci does not provide any statutory or other basis for her interpretation, which the Court should reject. *See Velez*, 586 F. 3d at877; *Aldrich*, 566 F. 3d at 978-979.

While this specific issue appears to be one of first impression, the cases concerning Sections 1703(a)(1)(A) and (B) suggest that a proper interpretation of Section 1703(a)(1) gives effect to all of its subsections by reading those provisions for what they really say and nothing more: subsections (A) and (B) concern the *filing and furnishing* of the statement of record and property report *regardless of the veracity* of their contents, while subsection (C) concerns *only the veracity of their contents*. *See, e.g., Paquin v. Four Seasons of Tennessee, Inc.*, 519 F. 2d 1105, 1110 (5th Cir. 1975[1])(denying a claim under a predecessor of Sections 1703(a)(1)(A) and (B) on the basis that the property report and statement of record were legally sufficient and otherwise properly filed and furnished); *Gentry v. Harborage Cottages-Stuart, LLLP*, 602 F. Supp. 2d 1239, 1255-1256(S.D. Fla. 2009)(describing Sections 1703(a)(1)(A) and (B)—but not (C)—as "ILSFDA's registration and disclosure requirements" because they require the developer to file and furnish a statement of record and property report pursuant to Sections 1706 and 1707); *cf. Flint Ridge Development Co. v. Scenic Rivers Ass'n of Oklahoma*, 426 U.S. 776, 778-789(1976)(discussing Sections 1706 and 1707 in terms of the effective date and completeness of filing, not the accuracy of the contents filed). Under this reading, it would be possible for a

---

[1] In *Bonner v. City of Pritchard*, 661 F. 2d 1206 (11th Cir. 1981), the Eleventh Circuit, whose precedent is binding upon this Court, adopted all of the decisions of the Fifth Circuit as that court existed on September 30, 1981.

Egozi & Bennett, P.A. · 2999 NE 191st Street, Suite 407 · Aventura, Florida 33180 · Tel 305.931.3000 · Fax 305.931.9343

developer to comply with both Sections 1703(a)(1)(A) and (B) by timely filing and furnishing a statement of record and property report but nevertheless be in violation of Section 1703(a)(1)(C) because those documents contain material misrepresentations or omissions. In other words, the Defendants' reading of Section 1703(a)(1), unlike Ms. Degirmenci's, would not render subsection (C) superfluous such that it is clearly the more harmonious interpretation. *See Velez*, 586 F. 3d at877; *Aldrich*, 566 F. 3d at 978-979.

Consequently, the Court should not adopt Ms. Degirmenci's self-serving, hodgepodge reading of Sections 1703(a)(1)(A) and (B), as it would both render subsection (C) superfluous and improperly expand subsections (A) and (B) well beyond their plain meaning. In light of the foregoing, Ms. Degirmenci's purported claims under Sections 1703(a)(1)(A) and (B) fail as a matter of law. The Court must therefore dismiss Counts I and II of the Third Amended Complaint.

## V. The Court should decline supplemental jurisdiction over Counts V through IX.

Aside from the four ILSFDA claims discussed above, the Third Amended Complaint does not involve issues of federal law over which this Court has original jurisdiction. Rather, as discussed more fully below, Counts V through IX exclusively rely upon Florida law and are before this Court on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). However, 28 U.S.C. § 1367(c) provides that a district court may decline to exercise supplemental jurisdiction over a state law claim brought pursuant to subsection (a) where "the district court has dismissed all claims over which it has original jurisdiction[.]" *See also United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966)(dismissal of state law claims strongly encouraged when federal law claims are dismissed prior to trial); *Arnold v. Tuskeegee Univ.*, 212 Fed. Appx. 803, 811 (11th Cir. 2006)("When the district court has dismissed all federal claims from a case,

Egozi & Bennett, P.A. · 2999 NE 191st Street, Suite 407  ·  Aventura, Florida 33180  ·  Tel 305.931.3000  ·  Fax 305.931.9343

there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims."). Therefore, if the Court dismisses Counts I through IV for any of the reasons discussed above, it should also dismiss the remaining state law claims asserted in Counts V through IX. Indeed, were this Court to dismiss Counts I through IV of the Third Amended Complaint, this case would present facts identical to those before it in *Paramo v. IMICO Brickell, LLC*, 2008 WL 4360609 at *8-9(S.D. Fla. 2008), wherein the Court dismissed the plaintiffs' three ILSFDA claims and therefore declined supplemental jurisdiction over the their remaining state law claims. In keeping with this precedent, the Court should decline supplemental jurisdiction and dismiss the Third Amended Complaint in the event that it dismisses Counts I through IV.

In any event, the Court should also dismiss Counts VI and VII of the Third Amended Complaint for the reasons set forth below. Additionally, it should strike Ms. Degirmenci's overarching "Prayer for Relief" following Count IX as both procedurally improper and impermissibly vague.

## VI. Count VI fails to state a claim upon which relief may be granted pursuant to Florida's Deceptive and Unfair Trade Practices Act, Section 501.201 *et seq.* ("FDUTPA").

Count VI of the Third Amended Complaint purports to state a FDUTPA claim against Sapphire and GP under four erroneous legal theories, none of which should survive dismissal. *See, generally*, Third Amended Complaint at ¶¶185-188.

### A. The Court must dismiss each of Ms. Degirmenci's purported FDUTPA claims.

As a preliminary matter, the Court should dismiss Count VI in its entirety because it impermissibly lumps all of the Defendants together under the non-specific moniker "the Developer," such that it is impossible to determine which allegations of Count VI pertain to

which of the Defendants. *See* Reconsideration Order at 9-10, 10 n. 3("[L]ump[ing] all the Defendants together such that Defendants do not have fair notice of the conduct at issue" is a violation of the pleading requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure necessitating dismissal).

In Count VI, Ms. Degirmenci first claims that she is entitled to recover under FDUTPA because "the Developer" allegedly "violated 15 U.S.C. § 1703(a)(1)(A)-(D) and 15 U.S.C. § 1703(a)(2)(A) & (C)." Third Amended Complaint at ¶186(a). However, Ms. Degirmenci's purported Section 1703(a)(1)(A)-(D) claims fail for the reasons discussed more fully in Sections II and IV, above. As a corollary, subsection (a) of Count VI also fails to state a claim upon which relief may be granted because a plaintiff must allege *actual damages* to state a cause of action under FDUTPA. *See, e.g., City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86(Fla. 4th DCA 2008)("A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) *actual* damages.")(emphasis added; *quoting Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). Ms. Degirmenci has alleged no actual damages as a result of any purported ILSFDA violation, so any FDUTPA claim predicated on such purported violations must fail. *Id.* Finally, this Court has already dismissed all of Ms. Degirmenci's purported Section 1703(a)(2) claims *with prejudice*, such that she cannot now assert them under the guise of a FDUTPA claim.[2] *See* Order of Dismissal at 16-23 and 34; Reconsideration Order at 2.

Next, Ms. Degirmenci claims that she is entitled to recover under FDUTPA due to "the Developer's" purported violations of Chapter 718, Florida Statutes. Third Amended Complaint at ¶186(b). At the outset, this claim must be dismissed because it does not specify which

---

[2] Likewise, the Third Amended Complaint does not appear to provide any factual basis for a Section 1703(a)(2) statutory fraud claim, such that this aspect of Count VI should fail under Rule 9.

provision of Chapter 718 the Defendants violated nor how any or all of the Defendants violated it. This is a clear violation of Rule 8, and the Court should dismiss accordingly.

However, if Ms. Degirmenci intends to allege that the Defendants violated Section 718.202, Florida Statutes, by allegedly failing to comply with that statutes' escrow requirements in connection with this transaction (*see* Count V of the Third Amended Complaint), her purported FDUTPA claim fails as a matter of law because *a violation of Fla. Stat. § 718.202 is not a per se violation of FDUTPA*. In re Edgewater By the Bay, LLLP, 419 B.R. 511, 514-518(Bkrtcy. S.D. Fla. 2009)(Mark, J.). While it is no doubt true that the Florida legislature enacted Chapter 718 to protect the public, *see Asbury Arms Development Corporation v. Florida Department of Business Regulations, Division of Land Sales and Condominiums*, 456 So. 2d 1291, 1293 (Fla. 2d DCA 1984), both the Florida and federal courts have routinely held that a FDUTPA claim requires an allegation that the defendant has engaged in "a deceptive act or unfair trade practice," *not merely a statutory violation*. See, e.g., In re Edgewater by the Bay, LLLP, 419 B.R. at 514-518; Kia Motors America Corp. v. Butler, 985 So.2d 1133, 1140 (Fla. 3d DCA 2008); KC Leisure, Inc. v. Haber, 972 So.2d 1069, 1073 (Fla. 5th DCA 2008); Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F.Supp.2d 1350 (M.D. Fla.2007). As the *Edgewater* court explained in specifically rejecting a claim virtually identical to the one now asserted by Ms. Degirmenci, "Violations of laws or statutes that give rise to a FDUTPA claim *must be of the kind that proscribe unfair trade practices or unfair methods of competition*; not. . . a violation of any law or statute that may have some benefit to consumers." *Id.* at 517(emphasis added). As a result, the *Edgewater* court held that Fla. Stat. § 718.202 "is not a statute 'which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices' within the meaning of FDUTPA § 501.203(c)" such that the violation of

Egozi & Bennett, P.A. · 2999 NE 191ˢᵗ Street, Suite 407 · Aventura, Florida 33180 · Tel 305.931.3000 · Fax 305.931.9343

Chapter 718's escrow requirements is not an automatic violation of FDUTPA.  *Id.* at 517-518. Without some allegation as to how and why "the Developer's" purported violation of Chapter 718 constitutes an unfair trade practice or method of competition, Ms. Degirmenci's purported FDUTPA claim must fail.  *Id.*

Ms. Degirmenci next contends that ***after she executed the Contract*** "the Developer" frequently misrepresented the number of units sold in the building.  Third Amended Complaint at ¶186(c).  As the Court has explained to Ms. Degirmenci on several occasions, there can be no recovery for alleged misrepresentations made ***after she executed the Contract*** because (1) she cannot have suffered any damages and, correspondingly, (2) because she lacks standing to even bring such a claim.  *See* Reconsideration Order at 12, 12 n. 4; *City First Mortg. Corp.*, 988 So. 2d at 86(to state a claim under FDUTPA, a plaintiff must allege actual damages); *Rollins, Inc.*, 951 So. 2d at 869(same).

Ms. Degirmenci's final FDUTPA claim—that "the Developer" unlawfully collects and retains a "development fee" at closing—must fail for the same reason as her claims concerning misrepresentations about the number of units sold.  Specifically, Ms. Degirmenci has admitted that she never closed on the transaction (*see* Third Amended Complaint at ¶117), such that she could not have suffered any actual damages in that she never paid a developer fee.  Therefore, she both lacks standing to bring this claim and has otherwise failed to allege actual damages, both of which necessitate dismissal.  *See* Reconsideration Order at 12, 12 n. 4; *City First Mortg. Corp.*, 988 So. 2d at 86.

B. *Ms. Degirmenci is not entitled to rescind the Contract.*

Whatever the merits of her FDUTPA claims, Ms. Degirmenci's demand that the Court award her "equitable relief in the form of ***rescission*** of the Contract and enjoinment of the

Egozi & Bennett, P.A. · 2999 NE 191st Street, Suite 407 · Aventura, Florida 33180 · Tel 305.931.3000 · Fax 305.931.9343

developer from enforcing any terms of the Contract" is impermissible.   Third Amended

Complaint at ¶188(c)(emphasis added).   FDUTPA provides only three remedies: an award of

*actual* damages (which Ms. Degirmenci has not suffered; *see* above), a declaratory judgment, or

injunctive relief.   *See* Fla. Stat. 501.211(1), (2).   It does not provide for rescission.

    As the United States District Court for the Middle District of Florida cogently explained

when presented with a FDUTPA claim under similar facts:

> FDUTPA. . . offers claimants two types of remedies: (1) equitable
> relief in the form of a declaratory judgment or an injunction, and
> (2) legal relief in the form of *actual damages*.   *Alvi Armani
> Medical, Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1309 (S.D. Fla.
> 2008)(citing *Eclipse Med. v. Am. Hydro-Surgical Instruments*, 262
> F. Supp. 2d 1334, 1357 (S.D. Fla. 1999)).   *FDUTPA does not,
> however, provide for equitable relief other than a declaratory
> judgment or an injunction.* As a result, courts have found that *a
> FDUTPA violation does not support a claim for rescission.*
> *Werdmuller Von Elgg v. Carlyle Developers, Inc.*, No. 6:09-cv-
> 132-Orl-31KRS, 2009 WL 961144 at *2 (M.D. Fla. April 7,
> 2009)(concluding that "[a]lthough rescission is a form of equitable
> relief, the statute specifically includes *only* the remedies of an
> injunction or declaratory relief.").

*Parr v. Maesbury Homes, Inc.*, 2009 WL 5171770 at *6-7(M.D. Fla. 2009)(emphasis added).

Accordingly, to the extent Ms. Degirmenci seeks rescission based upon any of the above-

described alleged violations of FDUTPA (which should fail in their own right), her claim must

be dismissed.

**VII.   Count VII fails to state a claim for breach of contract.**

    "Under Florida law, the elements of a breach of contract action are: '1) a valid contract;

2) a material breach; and 3) damages.'"   *International Star Registry of Illinois*, 510 F. Supp. 2d

at 1022; *cf. Barbara G. Banks, P.A. v. Thomas D. Larden, P.A.*, 938 So. 2d 571, 575 (Fla. 4th

DCA 2006); *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA

2003)(same).   Although Count VII purports to state a claim for breach of contract against Sapphire on a variety of theories, only one of these may survive dismissal.   *See* Third Amended Complaint at ¶191(a)-(e).

    *A.  Ms. Degirmenci has failed to allege a breach of Section 5 of the Contract.*

    In Paragraphs 191(b) and (c), Ms. Degirmenci claims that Sapphire breached Section 5 of the Contract by using and borrowing funds for purposes other than "the acquisition, development, or construction of the Sapphire Condominium Development."   Yet again, Ms. Degirmenci has substituted her own self-serving interpretation of the Contract for what the document actually says.  Section 5 of the Contract reads, ***in its entirety***:

> ***Seller may borrow money from lenders for the acquisition, development and/or construction of the Condominium.*** Buyer agrees that any lender advancing funds for Seller's use in connection with the Condominium will have a prior mortgage on the Unit and the Condominium until closing. At closing, Seller shall cause the then applicable mortgages to be released and may use Buyer's closing proceeds for such purpose. Neither this Agreement, nor Buyers payment of deposits, will give Buyer any lien or claim against the Unit, the Condominium or the real property upon which the Condominium is being developed. Without limiting the generality of the foregoing, Buyers rights under this Agreement will be subordinate to all mortgages (and all modifications made to those mortgages) affecting the Unit or the Condominium (or the real property upon which the Condominium is being developed) even if those mortgages (or modifications) are made or recorded after the date of this Agreement.

[Emphasis added].  The first sentence of Section 5 clearly permits Sapphire to borrow money from lenders for the acquisition, development, and/or construction of the Condominium.  But nothing in Section 5 or any other provision of the Contract could even remotely be construed as prohibiting Sapphire from borrowing money for any other purpose.  Similarly, Section 5 of the Contract does not provide a single limitation on how Sapphire can go about using any funds it

Egozi & Bennett, P.A. · 2999 NE 191st Street, Suite 407 · Aventura, Florida 33180 · Tel 305.931.3000 · Fax 305.931.9343

elects to borrow except to say that it "may" use those funds for the acquisition, development, and/or construction of the Condominium.   To this end, Sapphire's purported election to borrow and spend money in a manner not discussed in Section 5 of the Contract cannot constitute a material breach of the Contract.   Absent a material breach, the purported claims asserted in Paragraphs 191(b) and (c) of the Third Amended Complaint must be dismissed.   *International Star Registry of Illinois*, 510 F. Supp. 2d at 1022.

       B.   *Ms. Degirmenci has failed to allege a breach of Section 4 of the Contract.*

       In Paragraph 191(d) of the Third Amended Complaint, Ms. Degirmenci asserts that Sapphire breached Section 4 of the Contract by allegedly using her "second ten percent escrow deposit" to pay sales commissions and marketing expenses.   Once again, Ms. Degirmenci is conjuring up non-existent contract language to suit her interests.   Section 4 reads, in relevant part: "Buyer agrees that all of Buyer's deposits in excess of ten percent (10%) of the Purchase Price *may* be used by Seller for construction and development purposes as permitted by law." (emphasis added).   Like Section 5, Section 4 merely sets out what Sapphire *may* do with Ms. Degirmenci's excess deposit; it says absolutely nothing about what the developer *may not* do. As explained above, Sapphire's election to make use of funds in a manner not even discussed in the Contract simply cannot amount to a material breach; therefore, the Court must dismiss. *International Star Registry of Illinois*, 510 F. Supp. 2d at 1022.

       C.   *Ms. Degirmenci has not suffered any damages as a result of Sapphire's alleged breaches of the Contract and has otherwise failed to provide Sapphire with notice and an opportunity to cure any such breaches.*

       Whatever the merits of Ms. Degirmenci's purported claims in Paragraph 191(a)-(e), she has yet again failed to allege—because she cannot truthfully allege—that she has incurred any damages as a result of Sapphire's alleged breaches of the Contract.   To this end, even if the

Egozi & Bennett, P.A.  ·  2999 NE 191st Street, Suite 407  ·  Aventura, Florida 33180  ·  Tel 305.931.3000  ·  Fax 305.931.9343

allegations of Paragraph 191(b)-(e)[3] properly allege a material breach of the Contract (they do not), the Court must dismiss Count VII for failure to state a cause of action. *International Star Registry of Illinois*, 510 F. Supp. 2d at 1022.

Lastly, even if the alleged breaches entitle Ms. Degirmenci to the return of her entire deposit as she erroneously alleges, the Third Amended Complaint does not allege—and, again, could not truthfully allege—that Ms. Degirmenci provided Sapphire with twenty (20) days notice of its purported breach and an opportunity to cure prior to filing suit as required by Section 13 of the Contract. This, too, necessitates dismissal of Count VII. *See Colony Square Company v. Prudential Insurance Company of America, Inc.*, 843 F. 2d 479, 481 (11th Cir. 1988)("Contracts which set forth the manner in which a party must exercise a remedy in the event of a default must be strictly adhered to. . . .If a party does not comply with the requirements of the contract's default clause, it forfeits its rights under the clause."); *School Board of Escambia County v. TIG Premier Insurance Company*, 110 F. Supp. 2d 1351, 1353 (N.D. Fla. 2000)("When the unambiguous language of a contract sets forth the manner in which a party must exercise a remedy in the event of a default, the party is bound by and must strictly adhere to the language"); *World Triathlon Corporation, Inc. v. SRS Sports Center SDN.BHD*, 2005 WL 1924749 at *3 (M.D. Fla. 2005)(same).

## VIII.   The Court should strike Ms. Degirmenci's "Prayer for Relief."

Immediately following Count IX of the Third Amended Complaint, Ms. Degirmenci has inserted an all-encompassing Prayer for Relief in which she demands *at least* twenty (20) distinct

---

[3] Sapphire concedes that Ms. Degirmenci has alleged damages as it pertains to the developer's purported failure to return her excess deposit because the damages flowing from such a breach (i.e., the amount of the excess deposit) are self-evident. *See* Third Amended Complaint at ¶191(a). Notwithstanding the foregoing, Sapphire does not concede that Ms. Degirmenci is entitled to recover any portion of her deposit nor that she is excused from performing under the Contract.

Egozi & Bennett, P.A. · 2999 NE 191st Street, Suite 407 · Aventura, Florida 33180 · Tel 305.931.3000 · Fax 305.931.9343

remedies "pursuant to [her] claims under the ILSFDA, FDUTPA, the Florida Condominium Act [Chapter 718, Florida Statutes], breach of contract, and for an accounting." Third Amended Complaint at 51-53. The Defendants are baffled as to why Ms. Degirmenci has dispensed with the generally accepted "Wherefore" clauses she employed in previous renditions of the complaint. Whatever Ms. Degirmenci's motivation, the Court should strike the Prayer for Relief for a number of reasons.

To begin with, the Prayer for Relief seeks remedies which pertain exclusively to claims this Court has already dismissed *with prejudice*. For instance, Ms. Degirmenci demands that the Court enter an order:

> e. [Granting her] Specific Performance, requiring the Developer to return plaintiff's escrow deposit;
>
> . . .
>
> p. [F]inding and adjudicating that the Plaintiff holds an equitable lien for the full amount of the deposits paid by the Plaintiff pursuant to the Contracts, plus other damages, together with attorney fees and costs, pre-judgment interest, costs, on any interest of the Defendants' in the Sapphire Condominium
>
> q. Declaring that the REGIONS Mortgage is inferior to Plaintiff's equitable lien for, at a minimum, the full amount of the deposits paid by the Plaintiffs pursuant to the Contracts;
>
> r. Foreclosing on Plaintiff's equitable lien for the full amount of the deposits paid by the Plaintiff pursuant to the Contracts, plus other damages, together with attorney fees and costs, pre-judgment interest, costs, on the real property, personal property, and personal property owned by the Developer free and clear of any and all of REGIONS security interests.

Third Amended Complaint at 51-52. As noted above, the Court has repeatedly explained to Ms. Degirmenci that the Contract expressly prohibits her from obtaining specific performance; to this end, the Court has already dismissed all of her demands for specific performance *with prejudice*.

Egozi & Bennett, P.A. · 2999 NE 191st Street, Suite 407 · Aventura, Florida 33180 · Tel 305.931.3000 · Fax 305.931.9343

*See* Order of Dismissal at 27-28; Contract at §13.   Consequently, the Court should strike Ms. Degirmenci's unauthorized demand for specific performance in subsection (e) of her Prayer for Relief.

Similarly, the Court has already dismissed Ms. Degirmenci's demands for an equitable lien *with prejudice*, such that it should not permit her to seek the relief she does in subsections (p), (q), and (r) of her Prayer for Relief.  Order of Dismissal at 29-30.  The Court should strike these claims for this reason, as well as the fact that the demands concerning the imposition and foreclosure of an equitable lien have no connection with any of the purported causes of action set forth in the Third Amended Complaint.

The Court should also strike the Prayer for Relief as impermissibly vague because the litany of relief sought is not linked to any specific claim(s) set forth in the Third Amended Complaint.  As a result, the Prayer for Relief appears to suggest that Ms. Degirmenci is seeking *__all__* of the relief enumerated therein as a remedy for *every* purported claim asserted in the Third Amended Complaint.  In this way, the Prayer for Relief yields a wide array of completely absurd claim/relief combinations.  The Court should therefore strike the Prayer for Relief.

WHEREFORE,   based   on   the   foregoing,   Defendant,   SAPPHIRE—FORT LAUDERDALE, LLLP, ALTMAN SAPPHIRE GP, LLC, and REGIONS FINANCIAL CORPORATION, respectfully request that this Court dismiss the Third Amended Complaint and grant such other and further relief as it deems just and proper.

Egozi & Bennett, P.A. · 2999 NE 191st Street, Suite 407 · Aventura, Florida 33180 · Tel 305.931.3000 · Fax 305.931.9343

Respectfully submitted,

EGOZI & BENNETT, P.A.
*Counsel for the Defendants*
2999 NE 191st Street
Suite 407
Aventura, Florida 33180
Telephone: (305) 931- 3000
Facsimile:  (305) 931-9343

By:

Joseph H. Rose
Florida Bar No. 56970
jrose@egozilaw.com
Bernard L. Egozi
Florida Bar No. 152544
begozi@egozilaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic mail through the CM/ECF system this 30th day of April, 2010 upon William D. Tucker, Esq., The Law Offices of William D. Tucker, P.A., 726 Northeast Second Avenue, Fort Lauderdale, Florida 33304.

Joseph H. Rose